**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

RONELL HANKS,                      :
    Petitioner,              :         CIVIL CASE NO.
                             :         3:17-CV-00751 (JCH)
    v.                       :
                             :
UNITED STATES OF AMERICA,          :         JANUARY 2, 2019
    Respondent.              :
                             :

**RULING RE: AMENDED MOTION TO VACATE, SET ASIDE, OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C. § 2255 (DOC. NO. 18)**

## I.  INTRODUCTION

Petitioner Ronell Hanks ("Hanks") moves to vacate, set aside, or correct his

sentence pursuant to section 2255 of title 28 of the United States Code.  See generally

Amended Motion to Vacate ("Am. Mot. to Vacate") (Doc. No. 18).  In his Amended

Petition, Hanks collaterally attacks his conviction on three grounds, all of which concern

Hanks's decision to plead guilty to a lesser-included count of conspiracy to distribute

heroin and cocaine.  See generally Memorandum in Support of Amended Motion to

Vacate ("Hanks's Mem.") (Doc. No. 18-1).  First, Hanks contends that his trial counsel,

Attorney Robert Golger ("Attorney Golger"), provided ineffective assistance of counsel

during the plea negotiations by failing to correctly advise Hanks of his eligibility for a

sentencing enhancement.  See id. at 29–41.  Second, he argues that his guilty plea was

not voluntarily, knowingly, and intelligently made.  See id. at 43–45.  Third, he claims

that his waiver of appellate and collateral attack rights is unenforceable for lack of

consideration.  See id. at 41–42.

For the reasons set forth below, Hanks's Amended Motion to Vacate (Doc. No.

18) is denied.

## II. BACKGROUND

On December 18, 2013, a federal grand jury returned an indictment charging Hanks with four counts, namely: (1) conspiracy to distribute more than five kilograms of cocaine and one kilogram of heroin, and other narcotics, in violation of sections 841(a)(1), 841(b)(1)(A)–(C), and 846 of title 21 of the United States Code; (2) possession with intent to distribute and distribution of narcotics, in violation of sections 841(a)(1) and 841(b)(1)(C) of title 21 of the United States Code; (3) possession of a firearm and ammunition by a convicted felon, in violation of sections 922(g)(1) and 924(a)(2) of title 18 of the United States Code; and (4) possession of a stolen firearm, in violation of sections 922(j) and 924(a)(2) of title 18 of the United States Code. See U.S. v. Hanks, No. 3:13-CR-229 (JCH) ("Hanks Criminal Docket"), Indictment (Doc. No. 14).

On January 6, 2014, Attorney Golger appeared on behalf of Hanks. See Hanks Criminal Docket, Attorney Appearance (Doc. No. 22). On August 21, 2014, Hanks pled guilty to a lesser-included count of conspiracy to distribute heroin and cocaine. See Hanks Criminal Docket, Plea Agreement (Doc. No. 277).

On February 26, 2015, this court sentenced Hanks to 204 months' imprisonment and five years of supervised release. See Hanks Criminal Docket, Judgment (Doc. No. 528). Hanks appealed his conviction and sentence, and the Second Circuit denied his appeal on May 16, 2016, on the basis that he had waived his appellate rights in his plea agreement. See Hanks Criminal Docket, Mandate of USCA (Doc. No. 679).

On May 8, 2017, Hanks timely initiated the instant proceedings as a pro se litigant under section 2255 of title 28 of the United States Code. See Motion to Vacate ("Mot. to Vacate") (Doc. No. 1). The respondent, the United States of America ("the government"), opposed the Motion to Vacate on June 13, 2017. See United States'

Response to Defendant's Motion Pursuant to 28 U.S.C. § 2255 ("Gov't's Resp.") (Doc. No. 4). Subsequently, this court appointed counsel to represent Hanks on July 26, 2017. Notice of Appearance (Doc. No. 10). On December 19, 2017, Hanks's counsel filed an Amended Motion to Vacate (Doc. No. 18), which is currently pending before this court.

On March 6, 2018, Hanks filed a Motion for Entry of Default (Doc. No. 25) on the basis that the government had not filed a response to Hanks's Amended Motion to Vacate. In its Response to Hanks's Motion for Entry of Default, the government noted that it had timely responded to the Motion to Vacate and that the Amended Motion to Vacate did not address the arguments the government had set forth in its Response or make additional points that warranted a further response. See United States' Response to Defendant's Motion for Default Entry 55(a) ("Gov't's Resp. to 55(a) Mot.") (Doc. No. 26). Hanks then submitted a Reply to the government's Response to his pro se Petition. Reply Memorandum of Ronell Hanks ("Reply") (Doc. No. 27-1).

On July 23, 2018, the court ruled that there were outstanding issues of fact concerning whether Attorney Golger provided Hanks with ineffective assistance of counsel, including whether Attorney Golger investigated Hanks's eligibility for a sentencing enhancement, whether he communicated to Hanks that the application of a sentencing enhancement was a certainty, and whether there is a reasonable probability that, but for Attorney Golger's advice regarding the sentencing enhancement, Hanks would not have pled guilty and would have insisted on going to trial. See Ruling on Amended Motion to Vacate ("First Ruling on Am. Mot. to Vacate") (Doc. No. 29) at 2. The court therefore conducted an evidentiary hearing and held argument on October 2,

2018.  Both Attorney Golger and Hanks testified at the hearing. In addition, the government and Hanks each introduced a number of exhibits.  <u>See</u> <u>generally</u> Marked Exhibit List (Doc. No. 36).  After the hearing, both parties submitted additional briefing and exhibits to supplement the record.

### III. FINDINGS OF FACT

The government and Hanks engaged in plea negotiations during the Spring and Summer of 2014.  On April 2, the government emailed Attorney Golger a draft plea agreement ("the April Agreement"), which proposed that Hanks plead guilty to Count One of the Indictment for conspiracy to distribute and to possess with intent to distribute at least one kilogram of heroin and at least five kilograms of cocaine.  <u>See</u> Hanks's Exhibit 1, Plea Agreement Dated 4/2/14 ("April Agreement"), at 1.  The charge carried a mandatory minimum sentence of ten years' imprisonment and a maximum sentence of life in prison.  <u>Id.</u> at 2.  According to the April Agreement's calculations, Hanks faced a sentencing range of 292 to 365 months of imprisonment under the Sentencing Guidelines.  <u>Id.</u> at 7.  This sentencing range was based, in part, on (1) the assumption that the United States Sentencing Commission would adopt certain amendments to the Sentencing Guidelines on November 1, 2014, that would reduce Hanks's base offense level by two points; and (2) the stipulation that Hanks's offense conduct involved five kilograms of heroin and five kilograms of cocaine.  <u>Id.</u> at 6–7.  The April Agreement also contained, in bolded text, the following provision:

> The parties acknowledge that in light of the defendant's prior conviction for a felony drug offense, the defendant could be eligible for a sentencing enhancement under 21 U.S.C. §§ 841(b)(1)(B)(iii) and 851, which would expose him to a mandatory minimum sentence of twenty years' imprisonment.  In light of this plea agreement, the Government agrees that it will not file the information required by § 851, and therefore the defendant will not be exposed to a mandatory term of twenty years' imprisonment.

Id. at 7.  The "prior conviction" referenced in this provision is Hanks's 2007 conviction in Connecticut state court, where he pled guilty to possession of narcotics with intent to sell under section 21a-277(a) of the Connecticut General Statutes.

Between April 2 and August 21, the date on which Hanks pled guilty, the government sent Hanks six additional plea proposals, each of which contained language noting that "[Hanks] could be eligible for a sentencing enhancement" in light of his prior conviction for a felony drug offense.  During this time period, the government also made a reverse proffer in which it presented the evidence that it had gathered for its case against Hanks to both Attorney Golger and Hanks.

In response to Hanks's filing of a Motion to Suppress, the court scheduled an evidentiary hearing for August 19, 2014.  On August 7, however, Attorney Golger notified the court that Hanks intended to plead guilty.  The court therefore scheduled a change of plea hearing for August 18.  Attorney Golger made this request for a change of plea hearing based on his conversations with Hanks's mother, who had informed him that Hanks wanted to plead guilty.  Hanks, however, claims that he never told his mother that he intended to plead guilty, and that he did not know that  a change of plea hearing had been scheduled until he was brought to court on August 18.  On that day, the government presented Hanks with two revised plea agreements, both of which Hanks rejected.  In light of these developments, the court rescheduled Hanks's suppression hearing for August 21, 2014.

 On the day of the suppression hearing, Attorney Golger met with Hanks at the courthouse and updated him about Attorney Golger's ongoing discussions with the government.  Specifically, the government had represented to Attorney Golger that, if

the suppression hearing went forward, the government would withdraw its plea agreement and take steps towards pursuing a section 851 sentencing enhancement. The parties dispute the precise language that Attorney Golger used when discussing the risk posed by the government's threat of a sentencing enhancement. According to Hanks's testimony, Attorney Golger told him that the government <u>would</u> file a section 851 information, which, in turn, <u>would</u> expose Hanks to a 20-year mandatory minimum sentence upon a conviction on Count One of the Indictment. On the other hand, Attorney Golger testified that he told Hanks that the government's filing of a section 851 information <u>could</u>, not <u>would</u>, expose him to a sentencing enhancement. There is no dispute, however, that Attorney Golger conveyed to Hanks that, if he proceeded with the suppression hearing, he would lose the government's plea offer and risk a sentencing enhancement. Nor is there any dispute that, at the end of this meeting, Hanks remained determined to move forward with the suppression hearing. Indeed, less than an hour before the start of the suppression hearing, Attorney Golger informed the government by email that he had met with Hanks for half an hour and that "Hanks appears steadfast in his desire for a trial." Government's Exhibit C, Email from 8/21/2014.

Hanks's mother and the mother of Hanks's child were present when Hanks was brought to the courtroom for the suppression hearing. Both of them urged Hanks to follow Attorney Golger's advice and to accept the plea deal. Shortly thereafter, Hanks informed the court that he intended to plead guilty pursuant to the terms of a plea agreement that was dated August 20 (the "August Plea Agreement").

Under the terms of this revised plea deal, Hanks would plead guilty to a lesser-included offense of Count One of the Indictment, charging him with conspiracy to distribute and to possess with intent to distribute at least 100 grams of heroin and at least 500 grams of cocaine.  <u>See</u> Hanks Criminal Docket, Plea Agreement ("August Plea Agreement") (Doc. No. 277) at 1.  This charge carried a mandatory minimum sentence of five years' imprisonment and a maximum sentence of forty years' imprisonment.  <u>Id.</u> at 2.  The government agreed to recommend that the court reduce Hanks's offense level under the Sentencing Guidelines by two levels for acceptance of responsibility.  <u>Id.</u> at 4–5.  Unlike the April Plea Agreement, however, the August Plea Agreement did not stipulate a drug quantity.  <u>Compare</u> April Plea Agreement at 6 <u>with</u> August Plea Agreement at 5.  Instead, the August Plea Agreement contemplated that the court would hold a <u>Fatico</u> hearing to determine this issue of fact, at which time the government would argue that Hanks's drug quantity was at least three kilograms of heroin and at least five kilograms of cocaine.  <u>See</u> August Plea Agreement at 5–7.  On the basis of this drug quantity, the government estimated that Hanks's guideline sentence range would be 262 to 327 months of imprisonment, assuming, again, the adoption of certain anticipated amendments to the Sentencing Guidelines.  <u>See</u> <u>id.</u> at 5–6.

As with the prior plea proposals, the August Plea Agreement noted that "[Hanks] could be eligible for a sentencing enhancement," but provided that the government would not seek such an enhancement as part of the plea deal.  <u>Id.</u> at 6.  The government also promised to dismiss the remaining counts charged against Hanks in the Indictment.  <u>Id.</u> at 9.  For his part, Hanks agreed to waive his right to appeal or

collaterally attack his conviction and sentence, except through a claim of ineffective assistance of counsel.  Id. at 7.

Upon being informed of Hanks's intentions to plead guilty, the court conducted a plea colloquy that lasted for nearly an hour and a half.  See Hanks Criminal Docket, Transcript of Change of Plea Hearing on August 21, 2014 ("Plea Colloquy Tr.") (Doc. No. 581).  On the basis of the answers given by Hanks under oath, as well as the remarks made by the government's counsel and Attorney Golger, the court found that Hanks had knowingly and voluntarily entered into the August Plea Agreement. Accordingly, Hanks was adjudged guilty.

## IV. LEGAL STANDARD

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted).  Section 2255 of title 28 of the United States Code permits a federal prisoner to move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a) (2016).  Therefore, relief is available "under [section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)) (internal quotation marks omitted).

The petitioner bears the burden of proving he is entitled to relief by a preponderance of the evidence.  See Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011).

## V.  DISCUSSION

Hanks advances three bases for vacating his guilty plea, judgment, and sentence.  First, he argues that he was deprived of his Sixth Amendment right to effective assistance of counsel because Attorney Golger incorrectly informed him that his prior state conviction would support a section 851 sentencing enhancement.  See Hanks's Mem. at 29–41.  Second, he argues that his misapprehension of the risk of a sentencing enhancement, along with other circumstances surrounding the hearing on August 21, rendered his guilty plea involuntary.  See id. at 43–45.  Third, Hanks claims that the August Plea Agreement's waiver of his rights to appeal or collaterally attack his conviction and sentence lacks consideration and is therefore unenforceable.  See id. at 41–42.  The court will address each of these arguments in turn.

### A.    Ineffective Assistance of Counsel

Hanks argues that his counsel was ineffective for advising him that he was eligible for a twenty-year sentencing enhancement under sections 841 and 851 of title 21 of the United States Code.  See id. at 29–41.  As discussed at length in this court's prior Ruling, a defendant is subject to a mandatory minimum sentence of twenty years' imprisonment if he commits a federal drug offense in violation of section 841(b) "after a prior conviction for a felony drug offense has become final."  21 U.S.C.A. § 841; see also First Ruling on Am. Mot. to Vacate at 6–7.  In order to seek such a sentencing enhancement, the government must file a section 851 information with the court stating the previous conviction that forms the basis for the sentencing enhancement.  See 21 U.S.C. § 851(a)(1); see also United States v. Morales, 560 F.3d 112, 113 (2d Cir. 2009).

Hanks argues that his state drug conviction in 2007 does not qualify as "a prior conviction for a felony drug offense" under section 841, meaning that the government had no basis for threating to file a section 851 information. <u>See</u> Hanks's Mem. at 13. Hanks contends that Attorney Golger failed to investigate whether Hanks's state conviction made him eligible for a sentencing enhancement. <u>See</u> <u>id.</u> at 30. Instead, Hanks claims, Attorney Golger incorrectly told him that, if he went forward with the suppression hearing, the government would file a section 851 information and, as a result, Hanks would face a twenty-year mandatory minimum if he were convicted at trial. <u>See</u> <u>id.</u> at 36. Hanks asserts that Attorney Golger's professional error caused him to plead guilty in order to avoid the sentencing enhancement. <u>See</u> <u>id.</u> at 38.

A petitioner claiming ineffective assistance of counsel must satisfy a two-prong test under <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First, he must demonstrate that his counsel's performance "fell below an objective standard of reasonableness." <u>Id.</u> at 688; <u>see also</u> <u>United States v. Abad</u>, 514 F.3d 271, 275 (2d Cir. 2008). Second, he must show that he was actually prejudiced as a result of counsel's deficient performance. <u>See</u> <u>Strickland</u>, 466 U.S. at 687, 692; <u>see also</u> <u>Harrington v. United States</u>, 689 F.3d 124, 129 (2d Cir. 2012). While the petitioner must prove deficient performance and actual prejudice, "there is no reason for a court to address both components of the inquiry if the [petitioner] makes an insufficient showing on one." <u>Garner v. Lee</u>, 908 F.3d 845, 861 (2d Cir. 2018) (internal quotation marks and alterations omitted). Where, as here, "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." <u>Id.</u> (internal quotation marks omitted).

To satisfy the prejudice requirement in the context of a guilty plea, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See Chhabra v. United States, 720 F.3d 395, 408 (2d Cir. 2013) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)) (internal quotation marks omitted). Moreover, the petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." United States v. Kimber, 777 F.3d 553, 563 n.1 (2d Cir. 2015) (internal quotation marks omitted). Where the "defendant's specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, the issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005) (quoting Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992)) (internal quotation marks and alterations omitted). In Chhabra, the Second Circuit identified four factors that the district court should consider when determining whether a defendant would have decided not to plead guilty and insisted instead on going to trial, namely: "[1] whether the defendant pleaded guilty in spite of knowing that the advice on which he claims to have relied might be inaccurate, [2] whether pleading guilty gained him a benefit in the form of more lenient sentencing, [3] whether the defendant advanced any basis for doubting the strength of the government's case against him, and [4] whether the government would have been free to prosecute the defendant on counts in addition to those on which he pleaded guilty." Chhabra, 720 F.3d at 408. However, the Second Circuit has also cautioned against "adopt[ing] mechanistic rules for determining whether

an adequate showing of prejudice has been made[.]" <u>Arteca</u>, 411 F.3d at 321. Instead, it has stressed that "the court should, before reaching a conclusion as to prejudice, take into account all relevant factors." <u>Gonzalez v. United States</u>, 722 F.3d 118, 132 (2d Cir. 2013).

In this case, the court need not decide whether Attorney Golger's performance fell below an objective standard of reasonableness because it concludes that Hanks's ineffective assistance claim fails to satisfy the prejudice prong of the <u>Strickland</u> test. Assuming that Attorney Golger misinformed Hanks as to his sentencing possibilities by erroneously telling him that he was eligible for a section 851 sentencing enhancement, the court finds that accurate information would not have made "any difference in his decision to enter a plea." <u>Arteca</u>, 411 F.3d at 320. The court therefore assumes for the purpose of these analyses that Attorney Golger incorrectly told Hanks that he would face a twenty-year mandatory minimum if the government filed a section 851 information and Hanks was convicted at trial.

Beginning with the first <u>Chhabra</u> factor, the record contains evidence suggesting that "[Hanks] pleaded guilty in spite of knowing that the advice on which he claims to have relied might be incorrect[.]" <u>Chhabra</u>, 720 F.3d at 408. At the evidentiary hearing, Attorney Golger testified that, in the months leading up to Hanks's guilty plea on August 21, Hanks had said that he was not concerned about the government filing a section 851 information because he was confident that his 2007 guilty plea in state court was an Alford plea, thus making him ineligible for a sentencing enhancement. Hanks does not dispute this testimony, even though it suggests that, prior to pleading guilty, Hanks did not view Attorney Golger's advice as to Hanks's eligibility for a section 851 sentencing

enhancement as correct.  Nor does Hanks attempt to reconcile this testimony with his

own assertions that, on August 21, he fully believed Attorney Golger when he

represented that Hanks was eligible for a sentencing enhancement.  In particular, the

record does not contain evidence that would help explain why Hanks doubted his

eligibility for a sentencing enhancement prior to August 21, but harbored no such doubts

on August 21.  Instead, Hanks's claim that he did not doubt Attorney Golger's legal

advice on August 21 rests solely on his self-serving testimony, which this court does not

credit.  Accordingly, the court concludes that the first Chhabra factor weighs against a

finding of actual prejudice because Hanks pled guilty in spite of harboring some doubts

about the accuracy of Attorney Golger's legal advice concerning his exposure to a

section 851 sentencing enhancement.[1]

      Turning to the second Chhabra factor, the court notes that, even if Hanks gained

nothing from the government's promise to not seek a sentencing enhancement, Hanks

nonetheless received several benefits from pleading guilty.  First, the August Plea

Agreement lowered his mandatory minimum sentence from ten years of imprisonment

to five years of imprisonment, and it reduced his maximum sentence of imprisonment

from life to forty years.  During the evidentiary hearing, Hanks attempted to discount

these reductions in sentencing exposure, testifying that the August Plea Agreement's

five-year mandatory minimum "didn't mean anything" to him because his expected term

---

[1] Furthermore, even the court were to find that the first Chhabra factor weighed in favor of Hanks, it would nevertheless conclude that Hanks has failed to satisfy the prejudice prong of the Strickland test. The Chhabra factors are not individually dispositive, but instead guide the court's analysis in determining whether the petitioner has been prejudiced in light of "all relevant factors."  Gonzalez, 722 F.3d at 132. As discussed below, the remaining three Chhabra factors, as well as other relevant considerations, establish that Hanks has not carried his burden of showing actual prejudice.  See Patterson v. United States, No. 12 CR. 823 (JFK), 2016 WL 3162069, at *5 (S.D.N.Y. June 2, 2016) (finding no prejudice where three of the four Chhabra factors weighed against the petitioner).

of imprisonment under the Sentencing Guidelines was well above ten years. Transcript of Evidentiary Hearing from October 2, 2018 ("Evidentiary Hearing Tr.") (Doc. No. 38) at 101:2–16. Hanks forgets, however, that the Sentencing Guidelines are not binding on this court. See United States v. Toro, 121 F. App'x 925 (2d Cir. 2005). Thus, as this court explained to Hanks at his plea colloquy, Hanks's sentence could potentially fall anywhere between the statutory minimum and maximum sentence of imprisonment. As a result, courts in this Circuit have routinely found that a defendant receives a benefit from pleading guilty when the plea agreement reduces his minimum or maximum exposure to imprisonment. See, e.g., Rodriguez v. United States, 185 F. Supp. 2d 311, 313 (S.D.N.Y. 2002); Nicholson v. United States, No. 09-CR-414 RJS, 2014 WL 4693615, at *9 (S.D.N.Y. Sept. 22, 2014), aff'd, 638 F. App'x 40 (2d Cir. 2016). Moreover, Hanks overlooks the fact that the government promised to recommend a two-level reduction from his adjusted offense level for acceptance of responsibility. The Second Circuit has recognized that such a recommendation is a benefit that defendants lose if they go to trial rather than plead guilty. See Arteca, 411 F.3d at 321.

With respect to the third Chhabra factor, Hanks has not advanced a basis for doubting the strength of the government's case against him. While Hanks disputes whether the government could have filed a superseding indictment charging him with a violation of section 924(c) of title 18 of the United States, see Supplementation of Record (Doc. No. 39) at 7–15, he does not attack the strength of the government's case for prosecuting the four charges in the original Indictment. See Padilla v. Keane, 331 F. Supp. 2d 209, 218 (S.D.N.Y. 2004) (finding no prejudice where the petitioner did not indicate any weaknesses in the government's case against him). On the other hand,

Attorney Golger testified that the evidence that the government had accumulated against Hanks was "overwhelming." Evidentiary Hearing Tr. at 66:19. The court credits this testimony. During Hanks's plea colloquy, the government represented that, had the case gone to trial, it intended to introduce into evidence, inter alia, wiretapped conversations and text messages, video and photographs taken during physical surveillance, testimony from cooperating witnesses who were involved in the alleged conspiracy to distribute narcotics, testimony from witnesses who had purchased narcotics from Hanks, and the narcotics and firearms that were seized at the time of the arrest. It is also noteworthy that seven of Hanks's thirteen co-defendants had pled guilty before Hanks accepted a plea deal, as courts in this Circuit have treated guilty pleas by a petitioner's co-defendants as indicative of the strength of the prosecution's case against the petitioner. See Arteca, 411 F.3d at 321; Alvarez-Estevez v. United States, No. 13 CR. 380 (JFK), 2016 WL 427903, at *8 (S.D.N.Y. Feb. 3, 2016), certificate of appealability denied (Aug. 31, 2016) (noting that all of the petitioner's co-defendants chose to plead guilty when assessing the strength of the government's case against the petitioner).

The fourth Chhabra factor also weighs against Hanks because the August Plea Agreement resulted in the dismissal of the three remaining counts in the Indictment. At the evidentiary hearing, Hanks's counsel sought to discount the benefits of this dismissal by asserting, without any explanation, that convictions on these three counts would not have increased Hanks's offense level under the Sentencing Guidelines. It is risky, however, to engage in such forecasting. Given that trials are inherently unpredictable, neither this court nor Hanks's present counsel can conclude with

absolute certainty that the government's prosecution of the remaining counts in the Indictment would not have exposed Hanks to greater liability and punishment.  See Phan v. McCoy, No. 94-CV-1596 (RSP/GJD), 1997 WL 570690, at *6 (N.D.N.Y. Aug. 28, 1997) (noting "the inherent risks of going to trial"); White v. Greene, No. 05-CV-0545(VEB), 2010 WL 2104290, at *5 (W.D.N.Y. May 24, 2010) ("Given the inherently unpredictable nature of trial, it is impossible to know with certainty how events are going to unfold and what their impact on myriad, intertwined tactical decisions will be.").[2] Thus, at a minimum, the August Plea Agreement allowed Hanks to avoid the unforeseen and unforeseeable risks of defending against the three dismissed counts. See United States v. Reap, 391 F. App'x 99, 102 (2d Cir. 2010) (noting that the defendant benefited from his plea deal because he, inter alia, "avoided having to defend against the government's case . . . [and] eliminated any element of risk in proceeding to trial").  Put differently, the government's dismissal of the remainder of the Indictment benefited Hanks by providing him with greater certainty as to the extent of his liability and punishment.  See United States v. Morgan, 406 F.3d 135, 137 (2d Cir.2005) (noting that the allocation of risk between the defendant and the government is a benefit of the plea agreement process).[3]  As a result, the fourth Chhabra factor favors a finding of no prejudice in this case.

---

[2] Indeed, it appears that Hanks has overlooked at least one modest benefit that he gained from not being convicted on the dismissed counts, namely: he was not required to pay a special assessment on each of those counts.  See United States v. Rosario, 111 F.3d 293, 301 (2d Cir. 1997) (recognizing that special assessments are a form of punishment).

[3] The court also notes that, in Chhabra, the Second Circuit did not suggest that the dismissal of pending counts mattered to a prejudice analysis only when those counts increased a defendant's offense level under the Sentencing Guidelines.  Instead, the court broadly articulated the factor as "whether the government would have been free to prosecute the defendant on counts in addition to those on which he pleaded guilty."  Chhabra, 720 F.3d at 408.

Furthermore, Hanks does not identify other relevant factors that are sufficient to support a prejudice finding. In support of his claim that he would have gone to trial but for the threat of a twenty-year mandatory minimum, Hanks relies on his own testimony and the affidavits of two family members. Specifically, Hanks testified at the evidentiary hearing that his conversations with Attorney Golger on August 21 led him to believe that he was eligible for a section 851 enhancement and that the Government would file a section 851 information if Hanks went forward with the hearing on his Motion to Suppress. Hanks further testified that he only decided to plead guilty on August 21 in order to avoid the twenty-year mandatory minimum. These types of "self-serving and conclusory statement[s]" are generally insufficient to show prejudice in the context of guilty pleas. Arteca, 411 F.3d at 322. In this case, however, Hanks's statements find some corroboration in the Affidavits submitted by his mother and the mother of his child, both of whom were present at the August 21 hearing. See Hanks's Exhibit 18, Affidavit of Tracy Lyles; Hanks's Exhibit 19, Affidavit of Shameka Rorie. In their Affidavits, these women recount how Attorney Golger approached them just prior to the start of the hearing, told them that Hanks remained determined to proceed to trial, and asked them to convince Hanks to plead guilty in light of the sentencing enhancement that he would face if he went to trial and was convicted. The two women further represent that they spoke with Hanks before the hearing began and convinced him that a plea deal was in his best interest.

Notwithstanding these Affidavits, the record as whole does not support Hanks's claim that the threat of a section 851 sentencing enhancement was the deciding factor in his decision to plead guilty on August 21. First, the court notes that this threat was

present in the April Plea Agreement, which provided that, "[i]n light of this plea agreement, the Government agrees that it will not file the information required by § 851, and therefore [Hanks] will not be exposed to a mandatory term of twenty years' imprisonment." April Plea Agreement at 7. This language clearly ties the government's decision to forgo the filing of a section 851 information to Hanks's decision to plead guilty. Moreover, Hanks testified at the evidentiary hearing that he reviewed the April Plea Agreement with Attorney Golger, including the provision concerning the section 851 sentencing enhancement. Thus, more than four months before pleading guilty, Hanks was on notice of the government's threat to pursue a sentencing enhancement if Hanks chose to go to trial. The fact that this threat was present when Hanks declined to accept each of the six preceding plea agreements undercuts his claim that he only pled guilty because he discovered on August 21 that the government would, in fact, follow through on its threats to file a section 851 information.

Second, although Hanks argues that the sentencing enhancement was "the crux of [his] decision" to plead guilty, he also acknowledges that he remained determined to go to trial even after Attorney Golger informed him on August 21 that the government would withdraw its plea deal and file a section 851 information if Hanks proceeded with the suppression hearing. See Reply at 12. In other words, even after spending thirty minutes with Attorney Golger discussing the government's threat to seek an enhanced twenty-year mandatory minimum, Hanks remained steadfast in his decision to go to trial. It was only at the suppression hearing, after Hanks entered the courtroom and spoke with his family, that he decided to enter a guilty plea. This lag between Attorney Golger's conveyance of the government's threat and Hanks's change of plea weakens

the causal connection between the two, raising the possibility that intervening factors, such as Hanks's conversations with his family, caused the change of plea. Although Hanks attributes this lag to the fact that the prospects of a twenty-year mandatory minimum had not "sunk in yet," Evidentiary Hearing Tr. at 108:22–24, the court does not credit this explanation in light of the evidence in the record showing that Hanks had been on notice of such a threat since April. As noted above, August 21 was not the first time that Hanks was confronted with the risk that he would face a twenty-year mandatory minimum if he proceeded to trial. See, supra, at 17–18. Thus, Hanks should not have been surprised when the government indicated on August 21 that it intended to make good on its threats to seek a section 851 enhancement.

Finally, the court notes that Hanks expressed no concerns about the threat of a section 851 enhancement during his hour-and-a-half plea colloquy, even though he did voice a number of concerns about other provisions in the August Plea Agreement. For example, Hanks asked the court several questions about the Agreement's forfeiture provisions, see Plea Colloquy Tr. at 5:18–9:3; how the court aggregated drug quantities for the purposes of sentencing, see id. at 10:2–15:4; and whether the plea agreement limited his ability to contest certain issues of fact relevant to his term of imprisonment under the Sentencing Guidelines, see id. at 15:11–18:14. These questions are notable for two reasons. First, they suggest that, notwithstanding Hanks's understanding that the government would file a section 851 information if he proceeded with the suppression hearing, Hanks harbored other concerns about the plea deal that might have led him to not plead guilty on August 21. In other words, these questions indicate that Hanks had not yet made up his mind to plead guilty, and further that his decision to

plead guilty depended, in part, on the court's responses to his concerns about issues that were important to him but none of which related to the section 851 sentencing enhancement. Second, these questions highlight Hanks's willingness to vocalize concerns that he had about his plea deal, including concerns that he had already discussed with Attorney Golger. According to Attorney Golger's uncontested representations at the plea colloquy, Attorney Golger had previously discussed with Hanks several of the questions that Hanks posed to the court during the plea colloquy. Hanks nevertheless wanted to confirm the accuracy of Attorney Golger's advice with the court. In light of Hanks's willingness to seek clarification and confirmation from the court on legal issues that he had already discussed with counsel, his failure to voice any concerns about the section 851 sentencing enhancement seriously calls into question his claim that the threat of this sentencing enhancement was pivotal to his decision to plead guilty.

Taking all of these relevant factors into consideration, the court concludes that Hanks has not met his burden of showing that there is a reasonable probability that, but for Attorney Golger's errors, he would not have pleaded guilty and would have insisted on going to trial. Accordingly, the court dismisses Hanks's ineffective assistance claim without reaching the issue of whether Attorney Golger's performance was deficient under Strickland's first prong.

B.    Knowing and Voluntary Plea

Hanks asserts that he did not voluntarily, knowingly, and intelligently enter into a plea agreement on August 21. See Hanks's Mem. at 37–38, 43–45. This involuntary plea claim rests on two bases. First, Hank argues that his plea was rendered

involuntary by Attorney Golger's inaccurate advice about his exposure to a sentencing enhancement.  <u>See</u> <u>id.</u> at 37–38.  Second, he argues that the circumstances surrounding his guilty plea on August 21 were coercive.  <u>See</u> <u>id.</u> at 43–45.  In particular, he contends that the government's empty threat to file a section 851 information, combined with the short period of time given to Hanks to respond to this threat, forced him to plead guilty.  <u>See</u> <u>id.</u>

It is well settled that "a guilty plea violates due process and is therefore invalid if not entered voluntarily and intelligently."  <u>United States v. Yang Chia Tien</u>, 720 F.3d 464, 468 (2d Cir. 2013).  A plea is deemed voluntary when "it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally."  <u>Miller v. Angliker</u>, 848 F.2d 1312, 1320 (2d Cir. 1988).  It is deemed intelligent when "the [defendant] had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way[.]"  <u>Id.</u>  As the Supreme Court has explained, "[t]he longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 56 (1985) (internal quotation marks omitted).  However, where the petitioner claims that his plea was rendered involuntary as a result of ineffective assistance of counsel, that claim must be analyzed under <u>Strickland</u>'s two-part test.  <u>See</u> <u>id.</u> (applying the two-part <u>Strickland</u> test where the petitioner claimed that his plea was involuntary because "his attorney supplied him with information . . . that was erroneous").  In other words, petitioners cannot avoid the requirements of <u>Strickland</u> by simply relabeling their ineffective assistance claims as involuntary plea

claims.  See Forest v. United States, No. CIV A 3:08CV777(JCH), 2008 WL 5329296, at

*3 (D. Conn. Dec. 18, 2008) (applying Strickland when the grounds for the petitioner's

involuntary plea claim were "intertwined" with the grounds for his ineffective assistance

claim).  Instead, Strickland applies whenever a petitioner's involuntary plea was the

product of ineffective assistance of counsel.  See United States v. Hultman, No.

3:00CR13(JBA), 2004 WL 1920696, at *3 (D. Conn. Aug. 25, 2004) ("Where, as here, a

petitioner claims his plea was involuntary as a result of ineffective assistance of

counsel, to succeed, petitioner must satisfy the two-part test of Strickland[.]").

In this case, the record does not support Hanks's claim that he did not voluntarily,

knowingly, and intelligently plead guilty on August 21.  To begin, neither Attorney

Golger's legal advice nor the government's threats of a sentencing enhancement

provide a basis for Hanks's involuntary plea claim because both are derivative of his

ineffective assistance claim.  In particular, if Attorney Golger had correctly informed

Hanks that he was not eligible for a sentencing enhancement, then Hanks would not

have erroneously believed that he would face a twenty-year mandatory minimum if he

did not plead guilty.  Furthermore, if Hanks knew that he did not qualify for such a

sentencing enhancement, then the government's threats to file a section 851

information would have lost most, if not all, of their coercive effects.  In other words,

these purported grounds for Hanks's involuntary plea claim are inseparable from the

bases for his ineffective assistance claim.  Thus, to the extent that Hanks's involuntary

plea claim rests on Attorney Golger's legal advice concerning the section 851

enhancement or the government's threats to seek such an enhancement, it is

subsumed by Hanks's ineffective assistance claim, which this court has already dismissed.

Furthermore, the record shows that Hanks had adequate time and opportunity on August 21 to consider his options, notwithstanding his assertions to the contrary. After Hanks indicated to the court his intentions to plead guilty, the court conducted a plea colloquy that lasted for nearly an hour and a half. At the start of this proceeding, the court informed Hanks that he should feel free to notify the court of any questions or concerns that he had about the August Plea Agreement. As noted above, see, supra, at 19–20, Hanks made good use of this invitation, asking the court a number of questions during the plea colloquy. Hanks also stated under oath that he had sufficient time to discuss his case with Attorney Golger, see Plea Colloquy Tr. at 23:15–19; that he was satisfied with Attorney Golger's representation and services, see id. at 23:10–12; that he understood the consequences of pleading guilty, see id. at 48:13–16; that no one had forced, threatened, or coerced him into pleading guilty, see id. at 47:16–18; and that he was pleading guilty voluntarily and of his own free will, see id. at 48:8–12, 51:11–13. Hanks's statements "carry a strong presumption of veracity," and courts in this Circuit do not lightly disregard the solemn declarations made by a defendant under oath in a plea allocution. United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); see also United States v. Frayler, 229 F.3d 1136, 1136 (2d Cir. 2000) (discrediting the petitioner's claim that he had insufficient time to consider the plea because it contradicted the "unequivocal admissions under oath" that he made at his plea allocution).

Hanks offers no argument for why this court should disregard the statements that he made during his plea colloquy, and the court sees no reason to do so. Instead, the court finds that the record does not support Hanks's assertions that time pressures or other coercive factors rendered his guilty plea invalid. Accordingly, the court dismisses Hanks's claim that his plea was not voluntarily, knowingly, and intelligently made.

C.    Waiver of Appeal and Collateral Attack Rights

Finally, Hanks argues that he did not receive consideration for his waiver of appellate and collateral attack rights, and that the waiver is therefore unenforceable. In particular, Hanks notes the following language in the August Plea Agreement:

> As noted above, the Government agrees that it will not file for a sentencing enhancement under 21 U.S.C. § 851. In exchange, the defendant agrees not to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, except a claim of ineffective assistance of counsel.

August Plea Agreement at 7. Hanks argues that this language – and specifically the use of the words "in exchange" – shows that the consideration for Hanks's waiver of appellate and collateral attack rights was the government's promise to not file a section 851 information. However, because Hanks was not eligible for a sentencing enhancement, Hanks contends that the government's promise to not file a section 851 information was of no value to Hanks. Thus, Hanks argues, the August Plea Agreement's waiver provision is unenforceable for lack of consideration.

It is well established that "a guilty plea can be challenged for contractual invalidity, including invalidity based on a lack of consideration." United States v. Brunetti, 376 F.3d 93, 95 (2d Cir. 2004). In examining a plea agreement's validity, "[courts] construe plea agreements according to contract law principles." United States

v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011) (internal quotation marks omitted).  However, they also "temper the application of ordinary contract principles with special due process concerns for fairness and the adequacy of procedural safeguards."  United States v. Lutchman, No. 17-291, 2018 WL 6362603, at *2 (2d Cir. Dec. 6, 2018).  In light of these concerns, the Second Circuit has directed that plea agreements should be construed "strictly against the Government," and it has further authorized district courts to "apply general fairness principles to invalidate particular terms of a plea agreement."  United States v. Ready, 82 F.3d 551, 559 (2d Cir. 1996).

In this case, Hanks's waiver of appeal and collateral attack rights was supported by adequate consideration.  Assuming that the government's promise to not file a section 851 information does not constitute valid consideration, Hanks received several other benefits from the August Plea Agreement, including (1) the government's recommendation of a two-level reduction for Hanks's acceptance of responsibility, and (2) significant reductions in the minimum and maximum terms of imprisonment that Hanks faced.  These benefits constitute sufficient consideration for the promises that Hanks made in the August Plea Agreement, including his waiver of appeal and collateral attack rights.  See United States v. Brunetti, 376 F.3d 93, 95 (2d Cir. 2004) (finding adequate consideration where the plea agreement gave the defendant merely "a chance at a reduced sentence") (emphasis in original); United States v. Reap, 391 F. App'x 99, 102 (2d Cir. 2010) (finding that the defendant received adequate consideration from a plea agreement that allowed the defendant to avoid having to defend against the government's case and recommended a three-level reduction in his offense level for acceptance of responsibility).

Furthermore, the court notes that these benefits serve as consideration for Hanks's waiver of appeal and collateral attack rights even though they do not appear in the waiver provision itself.  Although the waiver provision provides that the government will not file a section 851 information "[i]n exchange" for Hanks's promise to not appeal or collaterally attack his conviction, this language does not prevent the waiver provision from being supported by consideration found elsewhere in the August Plea Agreement. "It is axiomatic that 'when interpreting a contract, [courts] must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result.'" Zahringer v. Zahringer, 124 Conn. App. 672, 684 (2010) (quoting Office of Labor Relations v. New England Health Care Employees Union, Dist. 1199, AFL-CIO, 288 Conn. 223, 231–32 (2008)) (internal quotation marks omitted).  Hanks does not point to any cases in which a court deviated from this well-established rule by considering less than the entire contract when determining whether there exists adequate consideration.  Nor has the court's own research identified any cases requiring that consideration for a promise be located in the same paragraph where the promise itself was made.  See Lewis v. Don King Prods., Inc., 94 F. Supp. 2d 430, 442 (S.D.N.Y. 2000) ("[I]n determining whether there is consideration, one must look at the entire agreement, not merely at a single paragraph.") (citing, inter alia, 1 E. Allan Farnsworth, Farnsworth On Contracts § 2.3, at 76 (2d ed.1998)).  Indeed, such a requirement would run contrary to another hornbook principle of contract law, namely: that a single promise given by one party may serve as consideration for multiple promises given by another party.  See Restatement (Second) Contracts § 79 (consideration need not be equivalent); id. at § 80 (multiple promises

from one side may be exchanged for one promise from the other). Thus, even where some of the consideration to a contract is invalid, a contract may still be enforceable so long as the remainder of the consideration is valid. See <u>Osborne v. Locke Steel Chain Co.</u>, 153 Conn. 527, 533–34 (1966) (concluding that a contract was enforceable even though only part of the consideration was valid); Restatement (Second) of Contracts § 80 (1981) ("The fact that part of what is bargained for would not have been consideration if that part alone had been bargained for does not prevent the whole from being consideration.").

In accordance with these ordinary principles of contract law, the Second Circuit has considered the entirety of a plea agreement when determining whether a defendant's waiver of appeal and collateral attack rights is supported by consideration. <u>Cf.</u> <u>Lutchman</u>, 2018 WL 6362603, at *2 (finding that the defendant's waiver of the right to appeal his sentence was unsupported by consideration because the defendant "received no benefit from his plea beyond what he would have gotten by pleading guilty without an agreement"); <u>United States v. Salcido-Contreras</u>, 990 F.2d 51, 53 (2d Cir. 1993) ("In no circumstance, however, may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement."). Hanks has not identified any special due process concerns that might temper the application of ordinary contract law, and none are apparent to this court. Accordingly, the court finds that the government provided Hanks with adequate consideration for pleading guilty and waiving his appeal and collateral attack rights.

## VI. CONCLUSION

For the reasons set forth above, Hanks's Amended Motion to Vacate (Doc. No. 18) is **DENIED**.

Having denied Hanks's Amended Motion to Vacate, the court must now determine whether to issue a certificate of appealability pursuant to section 2253(c)(1) of title 28 of the United States Code. The court may issue such a certificate "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Second Circuit has explained, "a substantial showing does not compel a petitioner to demonstrate that he would prevail on the merits, but merely that the issues involved in his case are debatable among jurists of reason; that a court <u>could</u> resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further." <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 112 (2d Cir. 2000) (emphasis in original, internal quotation marks and alterations omitted). Although the court does not believe that it erred in denying Hanks's Motion to Vacate, Hanks has made a substantial showing of the denial of his constitutional right to the effective assistance of counsel. Accordingly, the court will issue a certificate of appealability.

The Clerk is hereby directed to close this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 2nd day of January, 2019.

/s/ Janet C. Hall _____
Janet C. Hall
United States District Judge